This appeal involves a suit for a right of way easement. The trial court held that the plaintiffs have an easement across the defendant's land.
Defendant J.C. Bull owns approximately 183 acres of land in Winston County, fronting on Alabama Highway # 195. He purchased this property in 1976 or 1977 from the heirs of Jodie M. Lee. Plaintiff Erin Harper Salsman owns forty acres of land to the north and east of Mr. Bull's property. She and her son Fred Salsman, III, brought this suit to have the court "establish and declare the old roadway which traverses the defendant's property from Alabama Highway 195 to the plaintiffs' property a permanent right-of-way or easement. . . ." The complaint alleged that "the said easement, right-of-way or roadway is theirs by prescription and that they are also entitled to the said easement by necessity."
The case came on for trial, after which the trial court entered the following judgment:
 "This cause coming on to be heard on the pleadings, upon the oral testimony and exhibits, and the view by the court of both plaintiff's and defendant's land by riding in a motor vehicle and walking upon the roadway in question and by riding upon the alleged other access to plaintiff's land to the north, now upon consideration of the foregoing, it is ORDERED, ADJUDGED AND DECREED AS FOLLOWS:
 "1. The owners of the land to the north not being parties to this suit, this court cannot decree a roadway across that land; the Court finds that that alleged roadway is the driveway to the dwelling house thereon, and passes through the yard or curtilage of said house, at least one gate, and a fence with no gate or other opening.
". . .
 "4. That plaintiffs Salsman have an easement for private roadway purposes across the above described lands of defendant Bull to the above described land of plaintiffs, as said road presently exists, which road runs from Alabama Highway No. 195 to said property of plaintiffs.
 "5. That defendant may maintain a locked gate across said roadway at its intersection with said Alabama Highway No. 195, provided he furnishes a key to plaintiffs.
 "6. Neither party shall interfere with the other's use of said roadway."
Mr. Bull appeals, arguing that the Salsmans have not proved facts which would *Page 29 
entitle them to either an easement by prescription or an easement of necessity. He cites authorities for the propositions that an easement by prescription can be established only by use for a period of twenty years or more, adverse to the owner of the premises, under claim of right, exclusive, continuous, and uninterrupted, with actual or presumptive knowledge of the owner; and an easement by necessity only arises where the dominant and servient estates trace title to a common source.
A common law way of necessity is a type of easement by implication and "rests on the implication that the parties intended and agreed to provide for such a way." Sayre v.Dickerson, 278 Ala. 477, 491, 179 So.2d 57 (Ala. 1965). For such an implication to arise, there must have been an original grantor who impliedly granted an easement across his remaining lands to the purchaser of the land-locked parcel. Therefore it has been stated that "[o]riginal unity of ownership of the dominant and servient tenements is always required for an easement of necessity." Helms v. Tullis, 398 So.2d 253, 255
(Ala. 1981); see also, Burrow v. Miller, 340 So.2d 779 (Ala. 1976); Sayre v. Dickerson, supra; Hamby v. Stepleton, 221 Ala. 536,130 So. 76 (1930).
This requirement of original unity of ownership is somewhat qualified, however, by the provisions of Code 1975, §§ 18-3-1
through 18-3-3, which allow the owner of a tract of land not within a municipality to acquire a right of way if his land is not adjacent to any public road. The procedure in such actions is the same as in cases of condemnation of lands for public uses, § 18-3-3, and the applicant must pay the owner for the value of the land taken, § 18-3-2. See Cotton v. May, 293 Ala. 212, 301 So.2d 168 (1974); Romano v. Thrower, 261 Ala. 361,74 So.2d 235 (1954).
Under neither of these types of easements of necessity can the trial court's judgment be affirmed, however. There was no proof of prior unity of ownership of the two parcels. The statutory action to acquire a right of way must be brought in the probate court. Section 18-3-3; Cotton v. May, supra.
If the trial court's judgment is to be affirmed, therefore, it must be on the basis of an easement by prescription. To establish an easement by prescription, the claimant must use the premises over which the easement is claimed for a period of twenty years or more, adversely to the owner of the premises, under claim of right, exclusive, continuous, and uninterrupted, with actual or presumptive knowledge of the owner. The presumption is that the use is permissive, and the claimant has the burden of proving that the use was adverse to the owner.Cotton v. May, supra; Belcher v. Belcher, 284 Ala. 254,224 So.2d 613 (1969); West v. West, 252 Ala. 296, 40 So.2d 873
(1949).
To determine whether the Salsmans have established an easement by prescription, it will be necessary to set out the facts in more detail.
In 1933, Mrs. Salsman's parents, the Harpers, set out to build a vacation cabin on the piece of land to which the Salsmans are now seeking access. A stream known as Clifty Creek runs across the land which is now owned by Mr. Bull and which was previously owned by the Lees. The road used by the Harpers at the time, and now claimed by Mrs. Salsman, crossed this creek on the Lees' land. Mr. Harper hired Homer Noblett to replace an old bridge across Clifty Creek in 1933. The Harpers substantially completed their cabin, but their son, Mrs. Salsman's brother, was killed in an accident with a firearm on Clifty Creek in 1934. They did not use their cabin after the accident, and vandals stole the doors and windows from it. Mr. Harper disassembled the cabin and sold the logs to a neighbor.
The bridge built by Mr. Noblett washed away some time in the late forties or early fifties. Mrs. Salsman testified that it was still standing in 1954 when she sold timber off of her land and used the road in question to haul the timber out. She testified that she and her family had visited the land four or five times a year since the thirties, and that since the bridge had washed away *Page 30 
they had parked the car when they reached the creek bank. She testified that they had gone to the land by way of this road every winter to cut a Christmas tree for their home. Her son testified that he had gone on the land every year to hunt and fish.
The Lees' land was largely wooded, but had a large filed which the road in question skirted for the first portion of its traverse of the Lees' property. The Lee family home was directly across Highway # 195 from this field, and the testimony was that the Lees could see the field and the road from their house. About seven years before he died, Jodie Lee put a gate on the road where it met the highway, but the evidence is unclear whether the Salsmans merely opened the gate or drove around it. Sam Lee, Jodie Lee's brother, testified that he had heard that the Harpers "slipped in" and hunted on their land. After Mr. Bull bought the land, he put up a better gate and locked it, but the Salsmans drove around it.
The above evidence and other evidence of record supports the trial court's judgment that the Salsmans have an easement for private roadway purposes. There was evidence that the Lees were aware of the Harpers' and the Salsmans' use of the property and that they did not give them permission to use the road. The use of the road was not frequent after the Harper boy died in 1933, but the evidence that it was used several times every year suffices, under the circumstances, to meet the test that it was continuous and uninterrupted. The facts that Mr. Harper built a bridge on the road and that they used the road in spite of the Lees' gate indicate that they used the road under claim of right. The requirement that the use be exclusive does not mean that it be to the exclusion of the Lees, but that the Harpers' claim was independent of any other claim. Belcher v. Belcher,284 Ala. 254, 224 So.2d 613 (1969). The Harpers have been using the road since the 1920's, when they acquired the land.
Thus, all of the requirements for an easement by prescription have been met, and the trial court did not err in determining that the Salsmans have an easement across Mr. Bull's land. Where a trial judge takes a view of the subject property there must be a strong showing of error before reversal is proper.Miles v. Moore, 262 Ala. 441, 79 So.2d 432 (1955); Moses v.Tarwater, 257 Ala. 361, 58 So.2d 757 (1952); Fuller v.Blackwell, 246 Ala. 476, 21 So.2d 617 (1945). Bull has not made such a showing here. The judgment is affirmed.
AFFIRMED.
TORBERT, C.J. and MADDOX, EMBRY and ADAMS, JJ., concur.