On Rehearing Ex Mero Mota
MOORE, Judge.
This court’s opinion of September 23, 2016, is withdrawn, and the following is substituted therefor.
Deborah Barker, Howard Thomas, Tari-sha Thomas, Johnny F. Morgan, and Allison S. Morgan (hereinafter referred to collectively as “the defendants”) appeal from a judgment entered by the Calhoun Circuit Court (“the trial court”) finding that Joe N. Bennett has a prescriptive easement over a certain roadway (“the roadway”) that passes through the defendants’ respective properties. We affirm the trial court’s judgment.
Procedural History
On July 31, 2013, Bennett filed complaint against the defendants, Donald L. Barker, and The Bank of New York Trust Company, requesting that the trial court declare that he had established an easement by prescription over the roadway.[1] The defendants subsequently answered the complaint.
After a trial, the trial court entered an order on February 1, 2016, stating:
“The roadway leading to [Bennett’s] property which is the subject matter of this case was clearly marked and delineated in US Geological Survey Maps since at least 1954 and clearly remains today. The roadway remains the only means of ingress and egress to [Bennett’s] property to a public road.
*45 “The property owned by [Bennett], which is served by the roadway, was originally purchased by [Bennett’s] father J.O. Bennett in July, 1974 and was used by him and his children continuing up to the present date. J.O. Bennett subsequently sold the property served by the roadway to [Bennett] on February 12, 1993. The roadway continued to be used on a regular basis by ... Bennett and his family. In the early 1990’s a subdivision was built between the then existing public road and [Bennett’s] property. ... [Barker] purchased the property on each side of the remaining roadway leading to the Bennett property beginning with a partial purchase in July, 2005. At the time of trial she owned both sides' of the remaining roadway which is the subject matter of this case. The evidence indicated that the roadway was clearly in existence at the time [Barker] purchased her property and it was known to her that the roadway was used by the Bennett family.
“The evidence clearly established that J.O. Bennett and his family utilized the roadway in question for nineteen (19) years and then subsequently by his son for an additionally twenty one (21) years in defiance of clearly visible posted signs. The Bennett family did not seek, ask or receive permission to utilize the roadway by the adjacent land owners for more than the statutory period of twenty (20) years. The catalyst behind the litigation was the closing of the roadway by [Barker] subsequent to the purchase of her property by her placement of a gate across the roadway which blocked [Bennett’s] access to his property.
“Although the area is wooded in nature, [Bennett] presented clear and convincing evidence to overcome the presumption of permissive use by their open, [continuous], uninterrupted and hostile utilization of the roadway.
“It is therefore ADJUDGED, ORDERED and DECREED that [Bennett] has established a Prescriptive Easement for ingress and egress along the roadway across the property of [Barker]. [Bennett] at his expense shall submit to the Court within sixty (60) days of this Order a survey of the existing roadway to be incorporated into this Order which shall be served upon [Barker]. [Barker] shall then be given fifteen (15) days to interpose an objection to the accuracy of the survey.”
On February 26, 2016, the trial court entered an order incorporating the survey filed by Bennett,
On March 14, 2016, Barker, the Thom-ases, and the Morgans filed their notice of appeal to this court. On May- 4, 2016, this court transferred the appeal to the Alabama Supreme Court for lack of subject-matter jurisdiction; that court subsequently transferred the appeal back to this court, pursuant to Ala. Code 1975, § 12-2-7.
This court remanded the cause to the trial court for the trial court to clarify whether the prescriptive easement that the trial court granted to Bennett traversed the property of the Thomases and the Morgans and to dispose of the claim against The Bank of New York Trust Company. On August 26, 2016, the trial court entered an order clarifying that the prescriptive easement that the trial court had granted to Bennett traversed the property of the Thomases and the Morgans and entering a default judgment against The Bank óf New York Trust Company.
Standard of Review
“ ‘[W]here the evidence has been [presented] ore tenus, a presumption of correctness attends the trial court’s conclusion on issues of fact, and this *46 Court will not disturb the trial court’s conclusion unless it is clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence.’ ”
Reed v. Board of Trs. for Alabama State Univ., 778 So.2d 791, 795 (Ala. 2000)(quoting Raidt v. Crane, 342 So.2d 358, 360 (Ala. 1977)).
Discussion
I. Prescriptive Easement
On appeal, the defendants argue that the trial court exceeded its discretion in determining that the elements for establishing an easement by prescription had been met by Bennett.
“To establish an easement by prescription, the claimant must use the premises over which the easement is claimed for a period of twenty years or more,-adversely to the owner of the premises, under claim of right, exclusive, continuous, and uninterrupted, with actual or presumptive knowledge of the owner. The presumption is that the use is'permissive, and the claimant has the burden of proving that the use was adverse to the owner. Cotton v. May, [293 Ala. 212, 301 So.2d 168 (1974)]; Belcher v. Belcher, 284 Ala. 254, 224 So.2d 613 (1969); West v. West, 252 Ala. 296, 40 So.2d 873 (1949).”
Bull v. Salsman, 435 So.2d 27, 29 (Ala. 1983).
A. Adverse Use
The defendants first argue that the trial court erred in determining that Bennett had overcome the presumption that his use of the roadway was permissive and that, therefore, he had failed to show that his use was adverse to the defendants. The defendants cite Osborn v. Champion International Corp., 892 So.2d 882, 887 (Ala. 2004), in which our supreme court noted that there is a .presumption of permissive use when the property at issue is unimproved woodland and that “affirmative evidence of adverse use, under a claim of right,” is- required to establish an easement by prescription. In the -present case, the evidence indicated that the roadway is, for the most part, on unimproved and wooded land. ■
In Ex parte Gilley, 55 So.3d 242 (Ala. 2010), our supreme court noted that this court had determined that the trial court had erred in awarding the Gilleys a prescriptive easement over a certain roadway because we concluded that there had been no evidence introduced to overcome the presumption of permissive use. Our supreme court noted that the evidence in Gilley indicated “that the property ha[d] been used as the only ingress and egress to the Gilleys’ property for more than 20 years, either by the Gilleys themselves, or by their predecessor in title,” and that the Gilleys and their predecessor in title had done so “without express permission” until “Aman erected a fence preventing the Gilleys from using the disputed property.” 55 So.3d at 246. There was also evidence indicating that the Gilleys had maintained the roadway at issue. 55 So.3d at 247. Our supreme court reversed this court’s decision, concluding that the Gilleys had presented sufficient evidence to overcome the presumption of permissive use. 55 So.3d at 247-48.
Similarly, in the present case, the evidence indicated that Bennett and J.O. Bennett, Bennett’s predecessor in title, had used the roadway for more than 20 years without express permission until Barker erected a gate across the roadway. Bennett testified .that he had used the roadway so much that it was “rutted out.” There was also evidence indicating that Bennett had cut branches from along the roadway *47 when they had impeded his travel. Bennett also testified that he had used the roadway continuously despite posted signs warning against trespassing on the roadway. Based on the foregoing, we. cannot conclude that the trial court exceeded its discretion in determining that Bennett had overcome the presumption of permissive use in this case.
The defendants also specifically argue that it was undisputed that Bennett had obtained the permission of Cecil Martin, Barker’s predecessor in title,, to access Bennett’s property. We note, however, that there was no evidence presented indicating that Bennett had obtained Martin’s or anyone else’s permission to use the roadway, only that Martin had given Bennett permission to park on Martin’s property that was located adjacent to the roadway. We conclude that the fact that Bennett had received permission to use property adjacent to the roadway was immaterial regarding whether Bennett had permission to use the roadway.'
The defendants also argue that Barker had permitted Bennett to use the roadway by unlocking her gate for him so that he could access the roadway. We note, however, that Barker did not erect the gate until 2009. By that time, Bennett and J.O. Bennett, Bennett’s predecessor in title, had used the roadway for more than 20 years. The defendants do not cite any caselaw indicating that the interactions between Barker and Bennett subsequent to the 20-year period having been met could defeat Bennett’s claim to a prescriptive easement, Therefore, we do not find the trial court in error on this point.
B.Claim of Right
The defendants next argue that Bennett’s conduct shows that fie was not using their property under a claim of right and that his use was not hostile, Specifically, they argue that Bennett admitted that he was -not claiming that. he owned the roadway. We note, however, that in Bull v. Salsman, 435 So.2d 27 (Ala. 1983), our supreme court held that the fact that the persons claiming a prescriptive .easement had used a certain road despite the erection of a gate evidenced, that they were using it under a claim of right. 435 So.2d at 30. Similarly, in the- present case, Bennett testified .that, despite there- being posted signs warning against trespassing, he-had used the roadway so much that the road was “rutted out.” Therefore, we conclude that the trial court did pot err in determining that Bennett had used the roadway under a claim of right.
C.Exclusivity
The defendants next argue that, because there was evidence indicating that others had used the roadway, Bennett’s use of the roadway was not exclusive. We note, however, that for the element of exclusivity to be met, “ ‘it is not necessary that [Bennett] should have been the only one who used or was entitled to use [the roadway], so long as he used it under a claim of right independently of others.’” Belcher v. Belcher, 284 Ala. 254, 257, 224 So.2d 613, 615 (1969) (quoting 4 Tiffany Real Property § 1199 (3d ed.)). We conclude that the actions of Bennett and his father in using 'the roadway as their exclusive means of ingress and egress for over 20 years, in violation of posted warning signs, so much that the road was “rutted out,” as well as Bennett’s cutting back branches along the roadway that impeded his passage, were sufficient -to show that Bennett and his father- had used the roadway “ ‘under a claim of right independently •of others.’ ” Id. Therefore, we find no error on this point.
D.Knowledge of Owner
The defendants next argue that Bennett failed to assert dominion and con *48 trol over the roadway so as to place them on notice of his claim. As noted previously, a person claiming to have a prescriptive easement must show that he or she used the property at issue “with actual or presumptive knowledge of the owner [of the property].” Bull, 435 So.2d at 29. In the present case, the evidence' indicated that the roadway was clearly visible from Barker’s house, which had previously been owned by Cecil Martin, and that Barker had seen Bennett using the roadway. Also, as previously noted, Bennett also testified that he and his family had used the roadway so much that it had “rutted out” and that he had cut limbs from along the roadway that had impeded his travel. Based on those facts, we cannot conclude that the trial court erred in determining that the defendants had at least presumptive knowledge of Bennett’s claim.
II. Easement by- Necessity
The defendants also argue that Bennett failed to prove that he was entitled to an easement by necessity and that Bennett was awarded, in effect, an easement by necessity without just compensation. We note, however, that Bennett did not seek an easement by necessity, and we have concluded that the trial court did not err in awarding Bennett an easement by prescription. Therefore, we conclude that the defendants’ argument on this point is without merit.
III. Admission of Evidence
Finally, the defendants argue that the trial court erred in admitting a 1954 United States Geological Survey Map for the purpose of showing that the roadway existed in 1954. We note, however, that there was undisputed evidence indicating that the roadway had existed and that it had been used by Bennett and his father for more than the 20-year statutory period. Whether the road had existed as far back as 1954 was not material to whether Bennett had established a prescriptive easement. Therefore, we conclude that any error in the admission of the map was harmless. Rule 45, Ala. R. App. P.
Conclusion
Based on the foregoing, we affirm the judgment of the trial court.
ON REHEARING EX MERO MOTU: OPINION OF SEPTEMBER 23, 2016, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
Thompson, P.J., and Pittman, Thomas, and Donaldson, JJ., concur.

. Donald L. Barker subsequently died before the complaint was served on him and, thus, was not a party to the case below and is not a party on appeal. The Bank of New York Trust Company was named as a defendant based on Bennett’s assertion that it was an indispensable party because it had instituted foreclosure proceedings against the Thomases. The Bank of New York Trust Company was served with the complaint, but it did not file an answer.